Appeal from the Bankruptcy Court judgment on a Chapter 13 bankruptcy case. The issue here on appeal is whether or not, in a Chapter 13 case, that the debtors can properly modify and or bifurcate a loan that is secured by a piece of property that has been mortgaged. Other than the debtor's principal residence. The Bankruptcy Court found that it was proper to bifurcate a particular loan in question here, which, by the way, the Anawales were debtors who resided in Norwalk and had two income properties in a neighboring city of Long Beach. One of those two properties is the subject property here, referred to as the Andy Street property. Mr. Kimmerer, if I heard you correctly, you said the issue was whether in Chapter 13 the debtor can modify a loan secured by property other than the residence. Correct. Isn't the real question whether it can modify it but still have the payments over the course of the original mortgage? That does, Your Honor, get to the meat of this case, if you will. I believe the competing sections here are Section 1322b-2, which is the enabling clause which enables for a loan to be bifurcated and or modified. And I think what appellees will contend is that there is a Supreme Court case, the Nobleman case, which addresses this issue. I guess to my concern is that I think before Doosnip, your position would be eminently reasonable within sort of the mainstream of bankruptcy thought that you can do lien stripping throughout the chapters. But how is that viable after Doosnip and Nobleman? I think with respect to the Doosnip case, I think Doosnip was clearly limited to a liquidation chapter of the Bankruptcy Code, Chapter 7. Sure, but its logic would seem to say that 506 doesn't trump the provisions of various chapters, wouldn't it? I think that was mentioned in the case. It was also mentioned very clearly in the Nobleman case that it's sort of a chicken and the egg argument. What comes first, the 506 valuation section for the 1322b-2 modification enabling clause? And certainly in the Nobleman case, the court there found that evaluation is secondary to the rights of the secured lenders, that their rights not be modified unreasonably by lien stripping. If the original note, the terms of the original note are maintained, the monthly payment amount would remain the same and the interest rate is not altered, then the debtors have a choice, two choices if you will. One would be to propose to have the secured amount valued, which by the way in this case was never argued or controverted by evidence below. One, they can have the secured amount valued and pay that within the 3-5 year, 3-36 months or 60 months if the judge agrees within the plan. But to do that, they would be in essence either shortening or reducing the amount of the monthly payments and reducing or altering the interest rate. However, the McGregor case, Scott, Pruitt, others that are mentioned by the trial court, and we mentioned everything as well, if the monthly payments are maintained at the price that is outlined in the original note and the interest rate is not altered as well, then the debtors have a second choice and that would be to avail themselves of 1322B-5, which is the code section which says that the debtors can cure any arrears and maintain payments beyond the term of the plan. And I re-emphasize that I think the trial court got it right, but those cases say that the debtor can choose whether or not to modify under 1322B-2 or cure and maintain beyond the life of the plan. And it seems to make sense if the court considers that it would be very difficult, if not impossible, for debtors to pay off a 30-year mortgage or a 28-year mortgage within 3-5 years. That argument certainly is appealing, but it's very hard to view the shortening of the term of the loan as not being a modification of the loan. Shortening the term and shortening the amount, actually. I mean, you continue the same payments, you continue the same interest, but instead of a 30-year mortgage, it's now a 20-year mortgage. And that is what the debtors were proposing to do. I think they were under the case, they were shorting from 18 to 14 years. That sounds an awful lot like a modification of the original agreement. And I think there is a lack of case law on a specific point. Setting aside Duesnip and Tim, which Duesnip, as I stated before, was involving a Chapter 7 liquidation case, and the court felt you just can't do that in a liquidation chapter. Chapter 13, Novoland, was a principal residence case. Very clearly, that's what the court was focusing on. Here, it's a little bit different. It's not a principal residence, and therefore, looking at the case law that is there, there is support for the notion that a debtor can value under 56A, the secured portion, and then cure and maintain under 1322b-5, beyond the term of the plan. And I think that's, in addition, if the court, I mentioned to bring it up earlier, that I believe that this court does need to consider which order was appealed from here on this appeal. I did mention in the briefing that there are two competing orders here. One is the confirmation order of the Chapter 13 plan itself. The other is the order that is on appeal here, which is a summary judgment, a ruling on a summary judgment, that addresses the specific issue that we're talking about here, is where the loan was valued. One, the loan was determined what was the secured portion, what was the unsecured portion, and also, thirdly, instructed the lender to amortize their loan schedules to reduce the payments from 18 to 14 years and apply them post-petition and after the plan, until the loan is paid in full. It is my contention that the appellants appealed the wrong order. They appealed from the ruling on summary judgment. And here, we're talking about how a loan can be treated out of the plan. Well, that really should have been appealed from the confirmation order in the bankruptcy case. There isn't one yet. Exactly. Well, that's their position. I mean, it's really kind of odd. Well, let's be clear. There are two competing orders, and I would invite the Court to look at this issue because I can't really find any case law on this point. In every Chapter 13 bankruptcy case, there is one order which confirms their plan, as proposed by the letters. Here in the Central District of California, judges in the Valley but in downtown L.A., they prefer that these lien-stripping cases are heard by an adversary case. What's wrong with that? As opposed to a notice motion. So, therefore, in this case, the summary judgment motion was filed, and for reasons known only to the trial court, it never really got decided until 2002. This plan was confirmed, I believe, in November of 2000. But isn't the reason for that, or one of the reasons, is that you do have valuation issues and issues between secured lenders and debtors, but there are a lot of other creditors out there, and so you can confirm a Chapter 13 plan, and I'll get the payment started through the trustee to the creditors. It's better for the system, better for the creditors, better for the debtors, the sooner they can start their fresh start. Now, I realize it's not necessarily the most tidy procedure, but what's wrong with it? Well, if I'm to understand... I mean, as I understand what Judge Buffer did here was he left that issue open, and so I'm going to confirm the plan, and I'm on notice that there may be a modification of the secured or attempt to lien strip or modification of secured lenders, but we're going to leave that as a separate issue. I'm going to confirm the plan, and that's how we're going to proceed. Did you interpret it a different way? Well, yes, I did. I mean, he confirmed the plan per se, but he left two conditions on final confirmation of the plan after how this lien stripping adversary case was resolved. The point I'm making is that if the court looks in the excerpts of the record or the Chapter 13 plan itself, and there is language there that the payments made to Washington Mutual Bank, the bank here, would be made outside the plan, my argument is that that puts them on notice, that if they want to file an objection, they should before this plan is confirmed. Sure, but if they'd appealed from that, what would they have said? If they appealed from that, they would have said... That they have no authority to make payments outside the plan? That would have been a nonstarter. Well, that is one basis for their objection. I mean, they would object to payments being made outside the plan as opposed to within a three- to five-year time period provided for in 1322b-2. They did not object to that. They did not, in the timely and furtherly cite the Crane case, which I'm puzzled by because that states that evaluation should be done at the time of plan confirmation. It seems to undercut the argument that it should be valued as a year 2002 or, strangely, they attach an appraisal report to one of the briefs filed with this court, which I think should be viewed as important. But, again, I think what the court really needs to consider on this, which judgment was appealed from, I would merely ask the court to consider that creditors do have an obligation to object to a Chapter 13 plan timely. If they disagree with any term that is in there, they know how to do it. They do it every day. They show up at the confirmation hearing, they file an objection beforehand, written in a paperwork, and they show up at the confirmation hearing and object. And the court is required to consider their objection. And I take your point on that. I guess my question is more directed to the practice, which apparently isn't a practice in the central district, to leave the valuation of certain secured assets to later. And it may well be just a legal issue of whether they're entitled to do that. That's something that the court— Because the theory of res judicata is, of course, you have the opportunity to raise it, but if the court's saying we're going to hear that later, it's difficult to argue that the confirmation plan is res judicata. I understand the court's concern, and I would agree, and I would invite the court to possibly visit that issue, because I don't know of any judgment from this court that addresses that issue or that policy of the central district for delaying somehow the valuation issue, which also I agree with the court. It impedes the debtor getting a fresh start, and it also arguably is impeding the rights of the creditors. And how do we determine the valuation? At what date do we determine value? But if the bankruptcy court didn't have the power to do it, in other words, if it— under the code, if that determination had to be made prior to the confirmation of the plan, doesn't that just put you back at square one? It doesn't really help you, does it, in this case? I think that it would. I mean, the bank is making the argument that they want an appraisal at some later date because they want to take the, quote-unquote, windfall of the rising real estate market, and if the housing question here, the property question is a higher value, well, then they may not have their lien stripped. So I think, you know, from the debtor's perspective, they would want that valuation done at or near the time of plan confirmation, and possibly if there could be some sort of policy instituted where these values are taken, you know, from the time the petition is filed, roughly 35 days later, there's a 341A. Shortly two weeks after that, there's a confirmation hearing. So within a span of two months at maximum, that should be a logical time to have this property valued. If there's a dispute on it, possibly a noticed motion, 30-day time period would be the more efficient way to address this lien stripping issue which involves real estate valuation. To delay it as the bank proposes for two to three years really, I believe, is unfair to the debtors. I think you have your argument at hand. Why don't you save some time for a model and what you want to make right now? I'd like to reserve some time if possible. Yeah, why don't you. Good morning. May I please declare my name is Alan Wolf and I represent Washington Mutual Bank. This is a Washington Mutual admits that this loan may be modified, but the method of modification is set forth in the code and it has to be strictly followed. What we have here, your honors, is income producing property which has a positive cash flow and which was never, never during this entire case into the state in default. The debtor seeks to strip down our lien to the value of $210,000 even though the principal balance at the time was approximately $240,000 and attempts to pay off the remaining debt over a reduced term of 14 years. There are several problems with this. The most obvious of which is 1325. A five B two and 1322 D. Which are part of the code. So part of the code completely applicable in this case and require require that one. This debt has to be paid through the term of the plan and two under 1322 D. Which some of the cases reference 1322 C changed in 1994 requires that the plan not exceed 60 months. In the nobleman case, the Supreme Court case controlling this case in this decision. The debtor tried to do exactly what the debtor is trying to do here. The debtor said we will bifurcate under 506 and therefore and then we will cure the payments and we will cure the payments because we're only making the regular monthly payments. We're not changing the interest rate. We're not changing the payment amount. We're paying the same payment on a reduced principle which results in payments over an extended period of time beyond the five years. That's not a modification was the debtor's argument in the nobleman case and the Supreme Court said you're wrong. Of course, this is a modification of the rights of the creditor in that case and therefore in that case, since it was the principal residence of the debtor, the debtor was not allowed to modify the loan. In this case, Your Honor, the debtor is allowed to modify our loan but it is a modification and not a cure. Modification and cure are distinct concepts. In a modification, the future rights are effective. In a cure, it's a reinstatement of a default. In a typical Chapter 13 plan, the debtor has a prepetition arrearage which is cured under 1322B5 over the term of the plan and regular monthly payments continue. That is a cure, a non-modification of rights. Under 1322B2, there is a modification. Things change in the future regarding that debt and the court in nobleman made it very clear that even though the payments remain the same, even though the interest rates remain the same, the fact that it's being paid over a shorter period of time is a modification. That the only license, the only license to modify in Chapter 13 is 1322B2. Conversely, 1325B5 has absolutely no rights to modification. And I think the court was very adept in looking at the Dusnov case, a Chapter 7 Supreme Court case, which talked about the strip down under 506 and whether or not there can be a modification. And the court held that in Chapter 7 you can't, but in other chapters you can. And there are lots of cases that say you can. But the important point to remember is that the license to do that is 1322B2, not 1322B5. In addition, there are some cases that in dicta say that a plan can exceed five years. First of all, that's contrary to 1322D. Moreover, those cases make a mistake. They use the language in 1322B5, which indicates that it applies to loans where the last payment is due after the last payment on the plan. In other words, long term debt, the typical mortgage debt. 1322B5 says that the typical mortgage debt can be cured, the default can be cured while they maintain payments. It doesn't say that a plan can exceed five years. The plan itself in the typical Chapter 13 is limited to the 60-month period. Right. But in this case, the confirmed plan allowed payments outside the plan, which, of course, is not an unusual feature of a Chapter 13 confirmed plan. The only question is when you can modify rights on a debt that's considered outside the plan. Right. There's nothing wrong with payments outside the plan. That's confirmed. Right. That's correct. The question, then, is to the extent to which and if you can modify in the context of a plan, those payments being made outside the plan. Right. You can certainly cure defaults. We know that. There is no right to modify outside the plan. The only rights are the rights contained in the code, and that's 1322B2. That's the right to modify. Right. And pre-Duznep, though, I think the contrary would have been, and pre-Nobleman, the contrary would have been true. That is correct. It was a common practice. And pre-Nobleman. We have Duznep, and we have Nobleman, and we have 1325A5B2, which says that the secured claim has to be paid over the life of the plan. And in this case, the secured claim, which is admittedly, allegedly $210,000, is not being paid over the life of the plan. It's being paid over an extended period of time. Right. Let's say you had a plan that was proposed in which your lien was stripped down, and then the payments for the stripped-down portion were made over the term of 60 months. Is there anything wrong with that? No. That's what we're proposing here. If the debtor proposes a plan that pays us up to 60 months, and again, it's for a lot of money. No, I'm talking about, in other words, the stripped, the, it modifies the terms of the loan by bifurcating secured and unsecured portions. It pays the secured portion over the original term of the loan, and the unsecured portion over 60 months. Is there anything wrong with that? Yes, there is. Because 1325A5B2 says that the secure claim has to be paid over the life of the plan. And the life of the plan under 1322D is five years. As a matter of fact, this Court has held the same thing in the Barnes case. In that case, they tried to do the same thing. They tried to make the payments over 19 years. The Ninth Circuit held that those payments have to be made over the life of the plan, which cannot exceed five years, citing, again, 1322A5B2 and 1322D. Does this really leave much of the modification process alive in mortgage cases? Because, I mean, there is some appeal to the argument that debtors aren't going to be able to pay a 30- the secured debt that was going to be paid off in 30 years in five. I completely agree. But you have to understand that strip down is really a windfall. Of course, it always was. But that's the theory of the bankruptcy code, is that you're only entitled to your fifth amount of protection on which you have a property interest. And that's tied to the value of the property. And that was the original theory of the code. I understand and agree. But my point is that it's to be strictly limited. And the code is written in such a way that it is strictly limited. We're also in a strange environment. We're in California. Not everybody lives in California. Not all loans are $300,000 or $400,000. There are many loans throughout the country that are $20,000 or $30,000, where it becomes feasible to do this over the term of the plan. But the code itself is quite clear in terms of what can be done. 1325A5B2 is there. It says what it says. And it's fairly clear. And the only time it would be practical is if you had a very high interest loan and the interest rates were so attractive that it would make sense to pay it over five years to reduce the amount. In the normal mortgage cases. The other point I'd like to make, Your Honor, is that there's a mistake that was made at the Bankruptcy Court level that Washington, D.C. was not aware of until the appeal to the district court. And that is we believe that the parties had stipulated to the value of the property. And, indeed, the Bankruptcy Court thought that as well. As the NOLAs indicated in the district court, that's not the case. Well, you didn't contest it. You didn't contest valuation before the Bankruptcy Court. That's correct. Because we believe that it had been stipulated. Hear me out. I know. You believed it was stipulated to. But you didn't contest it. So why should you be able to raise that on appeal now? And let me ask you a secondary question before you answer that, which is, are you really sure you want that? It's a two-edged sword. I agree it is a double-edged sword. It works both ways. It works when property values go up, and it also works when property values go down. But it ought to be equally applied to both debtors and creditors. So why should we contest it? The answer is yes. I think what ought to happen is that the valuation should be done at the appropriate time. And again, we turn to 1322B2, A2, A5B2, excuse me. And that says that the determination of value is made as of the effective date of the plan. And the question is, what is the effective date of the plan? There was an initial plan that was filed. That plan, by the way, provided nothing with the cram-down. There was a first amended plan that was filed. That plan provided nothing about the cram-down. It is only in the attempted- I sort of hinted at it by showing the listing as unsecured debt part of this loan. Sure. I mean, it's on the schedules as unsecured. I mean, the unsecured portion was identified on the schedules. So you certainly were on notice of that. And unless contested, it would have gone forward. I guess my question is, you want to contest the valuation now. And I really have trouble with the fact you say, well, we had an ad- we were given schedules. It was listed. We had a confirmed plan. We had a confirmation hearing. We had an adversary proceeding. And now we discovered we really should have contested valuation. Why should we let you do that on appeal? Couldn't you have gone back in on the Rule 60 motion or something like that? The motion to vacate, Your Honor, that's an excellent point. The problem is we didn't know that the stipulation was not in this case until the appeal at the district court. And, of course, there was no argument there. We have the same problem with timing, even, arguing when an evaluation should be made. It's an argument that was never presented to the Bankruptcy Court. It wasn't properly presented to the district court. I don't know. It's a new thing. And we normally don't deal with new things on appeal. Very well. I'll reserve my time. No, you actually don't get a server bottle. So if you want to make any further points, you better make them now. But I think we have your arguments in hand. We understand the issues. And unless there are further questions, I'd appreciate your argument. Thank you. I guess you did have a cross appeal. Oh, you did have a cross appeal. That's true. Yeah. I'm sorry. See? Taxi driver does that. Yes, see? Taxi driver. Go ahead. Just briefly, I think the court correctly identifies the practical realities, the problems that the Bank is proposing here. How do debtors possibly pay 30-year mortgages within three to five years? I think it's impossible. It comes very close to, if I dare get to the issue, super legislation. I mean, that really should be addressed by the legislature, not by the court. And I don't think the Bankruptcy Code really, all the commentators that I have looked at, said that the Bankruptcy Code really should be taken with a very large grain of common sense and should not be given a hyper-technical approach. The point he makes as to the 1322B2 as being the modifying clause, that is correct. That is the enabling clause that allows the loan to be bifurcated and or modified. However, the question for the court is my position, the debtor's position, that that modification does not take the one stick out of the bundle of rights held by the Bank in a way that should be disallowed by the Bankruptcy Code or this court. I think that the cases that are cited that allow for this second alternative where the debtors cure, first of all, get a value of the secured and unsecured portions and then cure any arrearages, and just because there weren't any arrearages in this particular case does not mean it's read conjunctively, cure any arrearages and maintain. Well, he didn't make the argument, but if the argument were that because there is no cure here, then you cannot maintain. I don't think that's what the Code should be read to say because the Bankruptcy Code. Well, it would be easy to miss a payment. But since there is no arrearage, that does not necessarily follow that you cannot avail yourself of the maintain provision of 1322B5. And Barnes' case, I think, was addressed. You know, lastly, the Barnes case was addressed by the trial court. That case involved a debtor proposing a plan that did not provide for curing of the prepetition arrearages. And therefore, that's why that case was not confirmed. And so as the trial court pointed out, I don't think that really brings much to the discussion here. And lastly, I guess I would urge the Court to reaffirm in total the judgment of the Bankruptcy Court, the trial court in this matter, and allow for confirmation of this particular plan and the modification and bifurcation of the loan involved, which was not on the debtor's principal residence. Thank you. My colleagues have reminded me that you had a cross-appeal, so I was completely incorrect when I said you didn't have any more time. But do you want to avail yourself of any time on your cross-appeal issues? I didn't argue it. Yeah, you didn't argue it. I didn't argue it. You really have to be limited to your cross-appeal issues. Thank you, Your Honor. Thank you. The case has really been a very interesting issue. Thank you both for your arguments. Thank you. The case will be adjourned. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.  Thank you.  Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Canby, Rymer, Thomas